569 So.2d 203 (1990)
Rose Mary PINES[1] and Lisa Pines, in her individual capacity and as tutrix for Roshondra Pines
v.
DR. CARLOS D. MORENO, INC. (A Professional Medical Corporation), d/b/a Hammond Diagnostic Clinic, Carlos D. Moreno, M.D., Glenda Solomon, Owen D. Linder, M.D., Gibraltor Insurance Company and Louisiana Medical Malpractice Insurance Company.
No. 89 CA 1147.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*204 Trevor G. Bryan, New Orleans, for plaintiffs-appellants Rosemary Pines, et al.
Franklin D. Beahm, New Orleans, for defendant-appellee Dr. Carlos Moreno.
John Litchfield, New Orleans, for defendant-appellee Dr. Owen Linder.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Plaintiff, Lisa Pines, filed this medical malpractice suit individually and on behalf of her minor daughter, Roshondra[2] Pines, seeking damages against defendants Dr. Carlos D. Moreno, Inc., Dr. Carlos D. Moreno, Glenda Solomon, Dr. Owen Linder, Louisiana Medical Mutual Insurance Company (LAMMICO), and Prudential Property and Casualty Insurance Company, for failure to diagnose her pregnancy. Plaintiff alleges that this failure prevented her from considering the option of aborting the fetus, which was afflicted with Cornelia DeLange Syndrome. Plaintiff also alleges that defendants' failure to diagnose her pregnancy denied her the opportunity to provide proper prenatal care, leading to the aggravation of the child's Cornelia DeLange Syndrome, or alternatively causing independent mental and physical retardation.

FACTS
Plaintiff's petition alleges that on March 12, 1982, she was taken by her mother to the Hammond Diagnostic Clinic[3] for a suspected pregnancy. She alleges that during her visit to the clinic she was examined by staff nurses and by Dr. Owen Linder;[4] however, no pelvic examination was performed. Furthermore, she contends that during her clinic visit a urine pregnancy *205 test, which read negative, was negligently performed by Glenda Solomon, a laboratory technician employed by the clinic. Plaintiff was informed by Dr. Linder that she was not pregnant and was given a new prescription for birth control pills. Plaintiff's third amending petition alleges that at the time she visited the clinic she was in fact pregnant with a fetus that was not viable. On May 1, 1982, plaintiff gave premature birth to Roshondra Pines, at the Lallie Kemp Charity Hospital. Roshondra Pines was born with the congenital birth defect known as Cornelia DeLange Syndrome.
Plaintiff's third amending petition also contains the following pertinent allegations:
XXC.
Under the circumstances of the lack of pre-natal [sic] care, the use of birth control pills during early pregnancy and the defects that could be observed with an ultrasound, the standard of care would have been to advise plaintiff Lisa Pines of the risk of deformity presented to the fetus and plaintiff would have been granted the option to terminate the pregnancy, which she would have chosen to do had she been advised of her pregnancy and the risk of a defective offspring.
. . . . .
XXI.
In the alternative, should this court find that defendants were not liable to plaintiffs for their failure to advise plaintiff of her pregnancy and the options she faced considering the likelihood of a defective offspring or refer her to a specialist who would properly advise her, defendants are nonetheless liable to plaintiff for failing to diagnose the pregnancy and failing to advise plaintiff to obtain proper pre-natal [sic] care. Said failure to provide proper pre-natal [sic] care aggravated the mental and physical retardation of Rashondra Pines which is associated with the congenital abnormality of Cornelia DeLange Syndrome.
. . . . .
XXVII.
Defendants had a duty to properly diagnose the pregnancy and advise Lisa Pines of it and that duty was owed to both plaintiffs Lisa Pines and Roshondra Pines, the failure to perform which duty led to the foreseeable consequence of an unwanted pregnancy and the birth of a severely physically and mentally retarded child which foreseeably places a severe burden on the financial, physical and emotional wherewithal of both parties above and beyond that ordinarily encountered in the rearing of a normal child into adulthood and the passage of life from adulthood to death.
Lisa Pines seeks damages individually for expenses incurred during pregnancy and delivery, pain and suffering, emotional and mental distress associated with the birth of an unplanned and unwanted child, economic costs of rearing a handicapped child, loss of society and companionship and mental pain and suffering associated with the rearing of and caring for a severely deformed and retarded child. Lisa Pines seeks damages on behalf of Roshondra for medical expenses, vocational training expenses, loss of earning capacity, expenses for institutional care, physical pain and suffering, and mental pain and suffering associated with her handicap.
The defendants filed an exception of no cause of action which the trial court sustained in part. The court gave the following pertinent reasons for its decision:
A.
The petition does not state a cause of action, under the Pitre decision, [Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988)] on behalf of Lisa Pines, for the loss of society and companionship with her daughter;
B.
The petition under Pitre, does not state a cause of action on behalf of Lisa Pines for any general medical expenses, or any general claims for mental anguish, based on the birth of a child with a *206 deformity, unless plaintiff can prove that the Cornelia de Lange [sic] Syndrome could have been properly diagnosed by defendants as of the time of Lisa Pines' consultation and could have been mitigated, or minimized through proper medical treatment if a correct diagnosis of the congenital defect could have been reasonably made at the time of such consultation;
C.
The petition does not state a cause of action, under Pitre, as to any claims of Roshondra Pines for loss of future earning capacity;
D.
The petition does not set forth a cause of action, under Pitre, on behalf of Rashondra Pines for any general claim for pain and suffering, permanent disability and disfigurement, or future medical expenses, unless it can be established that Cornelia de Lange Syndrome could be diagnosed and the effects eliminated, mitigated, or minimized, through reasonable medical treatment as of the date of consultation of Lisa Pines with defendants;
E.
The petition does not state a cause of action, under Pitre, and under the provisions of R.S. 40:1299.35.4(A) on behalf of Lisa Pines (if any is in fact claimed in the pleadings) for any consequential damages of any nature to which she may claim to be entitled on the basis of a decision to abort the fetus, had a proper diagnosis of pregnancy been made at the time of her consultation with defendant.
The plaintiff appealed, alleging the trial court erred in granting the defendants' exception of no cause of action with respect to certain portions of the damages or demand claimed by the plaintiff. We agree.

EXCEPTION OF NO CAUSE OF ACTION
The peremptory exception of no cause of action tests the legal sufficiency of the pleadings. "When a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled." Rodriguez v. American Bankers Insurance Co. of Fla., 386 So.2d 652 (La.1980), citing Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975).
The Rodriguez court explained that:
The purpose of the rule is to prevent multiple appeals. The trial court's ruling in this case is a final judgment which creates the right of appeal as to only part of plaintiff's cause of action and forces the intermediate court to consider the merits of that cause of action in a piecemeal fashion. The preferable procedure is for the trial court to overrule the exception and at the trial on the merits to exclude evidence of damages ... it (sic) the court believes such damages are not recoverable. Relator can then include the evidence by means of a proffer, and in any subsequent appeal all issues can be presented at one time.
Rodriguez, 386 So.2d at 652-53.
The defendant contends that partial exceptions of no cause of action are permissible where the petition sets forth separate and distinct causes of action. Defendant cites Bordelon v. Cochrane, 533 So.2d 82 (La.App.3d Cir.1988), writ denied, 536 So.2d 1255 (La.1989), in support of his argument. See also Bellah v. State Farm Fire & Cas. Ins., 546 So.2d 601 (La.App.3d Cir.1989), and City of Natchitoches v. State, 221 So.2d 534 (La.App.3d Cir.), writs denied, 254 La. 463 and 464, 223 So.2d 870 (1969). This court has declined to follow this jurisprudential rule. Miller v. McDonald's Corporation, 415 So.2d 418 (La. App. 1st Cir.1982), appeal after remand, 439 So.2d 561 (La.App. 1st Cir.1983), writ not considered, 442 So.2d 462 (La.1983). Instead, we adhere to the rule that if one portion of a petition asserts a cause of action, none of the other causes of action may be dismissed on an exception of no *207 cause of action. E. Lionel Pavlo Engineering Co. v. State, 429 So.2d 454 (La. App. 1st Cir.1983).[5]
In reviewing a judgment on an exception of no cause of action, an appellate court must accept as true all well pleaded allegations of the plaintiff. Every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. LSA-C.C.P. 931; Haskins v. Clary, 346 So.2d 193 (La.1977).
We must, therefore, accept as true the plaintiff's allegations that defendants were guilty of negligence that in fact caused the damages. Thus, our inquiry is whether defendants owed a duty of reasonable care to the plaintiffs and whether their negligence was a legal cause of the damage done to each of the plaintiffs' interest that was injured. Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988).
From the facts alleged, it appears that plaintiffs' petition sets forth four causes of action[6] involving the misdiagnosis of Lisa Pines' pregnancy. Additionally, the petition seeks numerous associated damages which plaintiff alleges are consequences of the negligent misdiagnosis of her pregnancy. The various causes of action can be described as follows: (1) a "wrongful birth" claim on behalf of Lisa Pines; (2) a "wrongful life" claim on behalf of Roshondra Pines; (3) an ordinary negligence (malpractice) claim on behalf of Lisa Pines for her own injuries and for the prenatal injuries caused to Roshondra by the direct negligence of defendants; (4) an ordinary negligence (malpractice) claim on behalf of Roshondra for the prenatal injuries caused to Roshondra by the direct negligence of defendants.
In the instant case the trial court apparently found that the plaintiff's petition, upon proper proof, did allege a cause of action with regard to the direct negligence claims of both Lisa Pines and Roshondra Pines as discussed in numbers three and four of the preceding paragraph. However, the court sustained defendants' exception of no cause of action as to Lisa Pines' "wrongful birth" claim and Roshondra Pines' "wrongful life" claim. The trial court cited the recent Supreme Court decision in Pitre in support of its ruling.
In Pitre the plaintiffs, Mr. and Mrs. Pitre, filed a wrongful birth claim on their own behalf and a wrongful life claim on behalf of their child who was conceived after a failed tubal ligation, a fact of which the physician allegedly was aware, and the child was thereafter born with albinism. The plaintiffs did not allege that the defendant-physician knew or should have known *208 of the risk that the child would be born with albinism.
The Pitre court concluded that the defendant-physician owed a duty to the Pitres to exercise the degree of care ordinarily exercised by surgeons performing such operations in that specialty. Moreover, if the physician was aware of the failure of the operation, he owed a duty to the Pitres to inform them that the object of sterilization had not been attained. The court went on to state in dicta that "[f]urthermore, there is now quite general agreement that a doctor who negligently fails directly to prevent the conception or birth of an unwanted child, as by negligently performing a sterilization or abortion procedure, or by failing to diagnose or inform the parents that the child might be born with a birth defectbecause of a disease or genetic conditionbreaches his duty of care owed to the parents." Pitre at 1157. (Emphasis added.)
Although the Pitre court concluded provisionally that the physician owed no duty to protect the child from the risk of albinism, the court refused to accept a categorical denial of any duty on the part of a physician to protect an unconceived child from being born with a birth defect. Instead, the court concluded that "[w]hen a physician knows or should know of the existence of an unreasonable risk that a child will be born with a birth defect, he owes a duty to the unconceived child as well as to its parents to exercise reasonable care in warning the potential parents and in assisting them to avoid the conception of the deformed child." Pitre, 530 So.2d 1157.[7]
Once the court establishes that a duty is in fact owed by the defendant to the plaintiff, the court must then concern itself with whether the doctor's negligence was a legal cause of the damage to the parent or child and, if so, the kind and the extent of damage to be attributed to the physician. Pitre, 530 So.2d 1151. After considering various rules and policy considerations the Pitre court concluded that:
[A]s a general principle, ... the same criterion of foreseeability and risk of harm which determined whether a physician in this kind of situation was negligent in the first instance should determine the extent of his liability for that negligence; and that the doctor should not be held liable for consequences which no reasonable practitioner would expect to follow from the conduct. In accordance with the almost universal rule, however, the physician shall be liable for all resulting harm to the person caused by a negligent physical impact upon the person of the plaintiff. Likewise, in accordance with the general rule, and by analogy to our civil code articles governing contractual damages, a physician who intentionally, recklessly or in bad faith violates his legal duty shall be liable for all damages, foreseeable or not, that are a direct consequence of his breach of obligation. (Emphasis added.)
Pitre, 530 So.2d 1161.
Applying these rules to the alleged damages, the Pitre court found that the parents, upon proper proof, might recover for the expenses incurred during pregnancy and delivery, the mother's pain and suffering, the father's loss of consortium, service, and society, their emotional and mental distress associated with the birth of an unplanned and unwanted child, and the unexpected restriction on their freedom to plan their family. These damages were deemed to be foreseeable consequences of the physician's alleged negligent acts and omissions. On the other hand, the court concluded that the parents could not recover for the special expenses regarding the child's albinism or for their emotional and mental distress associated with the child's deformity because the damages were not consequences that a reasonable practioner would expect to follow from the alleged *209 conduct.[8] The court based this decision in part on its knowledge of the congenital disorder of albinism and its apparent undetectability, reasoning that it could not infer that the physician reasonably could have foreseen an unreasonable risk of that birth defect.[9] The court, however, granted the parents leave to amend their petition to remove this deficiency.
In the instant case we find no error in the trial court's ruling that the plaintiff's original and amending petitions state a cause of action for direct negligence on behalf of Lisa Pines and Roshondra Pines. Although Roshondra Pines was born with the apparently unpreventable congenital defect, Cornelia DeLange Syndrome, the plaintiff's petition alleges that the improper diagnosis by Dr. Linder and the prescription for birth control pills which she took during her pregnancy contributed to or aggravated Roshondra's existing deformities. Apparently, plaintiff Lisa Pines does not contend that the malpractice directly caused the Cornelia DeLange Syndrome, but caused only an aggravation of the disease. Under these circumstances, it is clear that the defendants owed both Lisa and Roshondra a duty to properly diagnose the pregnancy and to recommend proper prenatal treatment. The duty to correctly diagnose a pregnancy encompasses the foreseeable risk that the unborn child will be affected by improper prenatal care. The defendants are therefore responsible for any damages associated with the foreseeable consequences of misdiagnosing a pregnancy, which consequences include foreseeable injuries caused to the fetus because of lack of proper prenatal care from the point of misdiagnosis, and the foreseeable injuries sustained by the parent because of the injuries to the child, including damages for loss of consortium, and mental pain and suffering.[10]
Because each plaintiff has stated at least one cause of action, the trial court erred in sustaining defendant's exception of no cause of action. Accordingly, the judgment of the trial court is reversed and the matter is remanded for further proceedings. Costs will await final disposition of this matter.
REVERSED AND REMANDED.
NOTES
[1] Rose Mary Pines, the mother of Lisa Pines, originally filed suit individually and on behalf of Lisa Pines and her granddaughter, Roshondra Pines. However, Rose Mary Pines was dismissed from the suit pursuant to an exception of lack of procedural capacity and no right of action.
[2] The various pleadings reflect the name of the minor as being spelled Roshondra and Roshondria. We have elected to use Roshondra except in those instances where we are citing quoted material.
[3] Dr. Carlos D. Moreno, Inc., is a professional medical corporation doing business as Hammond Diagnostic Clinic.
[4] Dr. Linder was hired by Dr. Moreno as a substitute physician for two weeks while Dr. Moreno was absent.
[5] In McGowan v. Ramey, 484 So.2d 785 (La. App. 1st Cir.1986), this court found that only one unfair trade practice cause of action had been alleged, and that the exception of no cause of action was directed at an accessory claim for one of the several elements of relief sought. We held that the said exception is not the proper procedural device to eliminate an isolated claim of relief from consideration by the court and/or jury.
[6] The various causes of action in this type of case have often been characterized by special legal nomenclature. The most commonly accepted terminology seems to be as follows.

A wrongful pregnancy or wrongful conception action involves a suit brought by the parents of a healthy, but unexpected, unplanned, or unwanted child for negligence leading to conception of pregnancy. (I.e. The parents allege that the negligent performance of a sterilization technique caused the conception of the unplanned child.) In a wrongful birth action, parents claim they would have avoided conception or terminated the pregnancy if they had been informed of the risk of birth defects to the child. In wrongful birth actions, the child's impairment is due to a genetic trait or to the mother's suffering from a disease such as rubella during pregnancy, in contrast to prenatal injury actions where harm to an embryo, fetus, or pregnant woman causes what otherwise would have been a healthy child to be born in an impaired state. A wrongful life action is brought by or on behalf of the child for negligence causing him to endure life in the afflicted condition. In such actions there is no allegation that the physician's negligence directly caused the defect. Rather, it is alleged that the physician's negligent practice or failure to properly advise the parents has led to the birth of the child in the afflicted condition. Pitre v. Opelousas General Hospital, 530 So.2d 1151; Comment, Wrongful Life: Should the Action be Allowed? 1987, 47 L.L.R. 1319.
[7] The court noted that the plaintiff's petition did not contain any allegation that the defendant physician knew or should have known of the risk of albinism. However, the court dismissed the child's suit provisionally, with leave to amend the petition within thirty days to state a cause of action.
[8] In addition the court held that the parents could not recover for the economic costs of rearing an unplanned and unwanted child.
[9] The court's reasoning for refusing to permit the recovery of the special expenses, and emotional pain and suffering associated with the birth defect implies that these damages may be recoverable upon proper allegations of knowledge on the part of the physician and the requisite forseeability.
[10] See Lejeune v. Rayne Branch Hosp., 539 So.2d 849 (La.App. 3d Cir.1989), affirmed, 556 So.2d 559 (La.1990).