592 So.2d 1344 (1991)
Travis PERSILVER
v.
The LOUISIANA DEPARTMENT OF TRANSPORTATION; State of Louisiana; the City of Franklin, Louisiana; Franklin, Louisiana City Police Department; Chief of Police, David Naquin, Franklin, Louisiana City Police.
No. CW 90 1257.
Court of Appeal of Louisiana, First Circuit.
August 8, 1991.
*1345 Cynthia C. LeBourgeois, James L. Brazee, Lafayette, for plaintiff.
Julius W. Grubbs, Jr., Haik & Minvielle, New Iberia, for State of La., through the Dept. of Transp. & Development.
Laura K. Austin, Preis & Kraft, Lafayette, for the City of Franklin & Franklin City Police Dept.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
LANIER, Judge.
This is a suit for damages in tort by Travis Persilver against the State of Louisiana through the Department of Transportation and Development (DOTD), the City of Franklin (City) and the City of Franklin Police Department (FPD). The City filed a peremptory exception raising the objection of no cause of action. The trial court overruled the exception citing Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1st Cir.1986). The City applied to this court for supervisory writs. We denied the City's application stating "We decline to exercise our supervisory jurisdiction. Relator has an adequate remedy by review on appeal." The Louisiana Supreme Court granted the City's application for supervisory and/or remedial writs and remanded the case to this court for briefing, argument and opinion. Persilver v. City of Franklin, 572 So.2d 83 (La.1991).[1]

FACTS
In his petition, Persilver alleges the following pertinent facts:

II.
On or about the evening of July 13, 1988, Petitioner, TRAVIS PERSILVER, was at the Drink Factory, a drinking establishment in Franklin, Louisiana.

III.
Prior to petitioner leaving the Drink Factory, defendant, the City of Franklin, *1346 through the City of Franklin Police Department, was called to the Drink Factory, by the on-premises manager and/or employees of said establishment in order to control Petitioner whose conduct and physical state indicated that he was intoxicated and a danger to himself and others.

IV.
Two (2) female police officers, whose names are presently unknown, were dispatched to the scene whereupon said officers, instead of arresting petitioner or driving him home, had petitioner give his car keys to a friend of petitioner and left, when they knew or should have known, that petitioner was in need of being controlled and/or brought home and that petitioner's friend had been drinking.

V.
Shortly thereafter, the petitioner obtained his keys and, when operating his vehicle in a westerly direction on Louisiana Highway 87 near Franklin, Louisiana, was caused to leave the aforementioned highway [sic] 87, at a location where there is an unmarked curve, resulting in petitioner proceeding straight ahead, flipping his vehicle several times.

VI.
As a result of said accident, petitioner suffered severe and disabling personal injuries causing permanent bodily impairment and paralysis, scarring, mental anguish, disability and loss of function, pain and suffering, loss of earnings, past and future, and medical expenses, past and future, which physical and mental pain and suffering and medical expenses will continue in the future by reason of the nature and severity of petitioner's injuries and disfigurement, the amounts of said damages to be shown at the trial of this matter.

VII.
At all times pertinent thereto, the police officers called to the Drink Factory were employed by the City of Franklin, through the Franklin City Police Department, both of which are vicariously responsible for the actions of these defendants under the theory of Respondeat Superior.

VIII.
Petitioner alleges that the accident was proximately caused by the negligence of defendants, particularly but not exclusively, for the following, to-wit:
A) City of Franklin and Franklin City Police Department:

1. Failure of Defendant, through its agents, two City of Franklin police officers, to properly exercise its responsibility to Petitioner in that it failed to take Petitioner into custody or take him home when it had the opportunity and after it was aware that Petitioner was a danger to himself and others;
2. Failure to use proper police technique in handling the situation at the Drink Factory;
3. Failure to properly train its police officers relative to protecting the public and responding to situations such as petitioner's;
4. Negligently failing to insure that the petitioner would not obtain his car keys, or that petioner [sic] would be brought home safely, having seen petitioner' [sic] condition.
5. Other acts of negligence that will be shown at the trial of this matter.
. . . . .

NO CAUSE OF ACTION
The City contends the trial court erred in overruling its objection of no cause of action because its police officers did not owe a duty to Persilver to arrest, detain or otherwise restrain him while he was intoxicated in a bar to prevent him from perhaps driving an automobile later and injuring *1347 himself.[2] Persilver replies that a particularized duty was owed to him by the City's police officers because a special relationship developed between them.
The peremptory exception raising the objection of no cause of action questions whether or not the law affords any remedy to the plaintiff under the allegations of the petition. If a remedy is provided, the objection must be overruled. The objection is triable solely on the face of the petition and any attached documents. La. C.C.P. art. 931. All pleaded facts are accepted as true, and any doubts are resolved in favor of the sufficiency of the petition. Succession of Bertaut, 572 So.2d 142 (La. App. 1st Cir.1990), writ denied, 573 So.2d 1111 (La.1991); White v. State, Department of Public Safety and Corrections Office of Motor Vehicle, 569 So.2d 1001 (La.App. 1st Cir.1990).
To assert a cause of action in negligence, a party must allege five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of duty element); and (5) actual damages (the damages element).[3]Fowler v. Roberts, 556 So.2d 1 (La.1989).
*1348 For the purpose of determining the validity of the City's objection, all pleaded allegations of fact are accepted as true. Accordingly, we must accept as true Persilver's allegations that the City, through its police officers, was guilty of negligence that in fact caused his damages. Thus, the only issues presented for our consideration are whether, under the facts alleged, the City owed a duty to Persilver and whether the City's negligence (breach of the duty) was a legal cause of the damage done to Persilver (the risk which caused the injury was within the ambit of the protection of the duty). Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988); Pines v. Dr. Carlos D. Moreno, Inc., 569 So.2d 203 (La.App. 1st Cir.1990).
In Fowler v. Roberts, 556 So.2d at 6, appears the following:
The duty issue in the determination of liability in negligence cases is often confused with the scope of liability or scope of protection issue. The former usually questions the existence of a duty, while the latter (which assumes that a duty exists) usually questions whether the plaintiff's injury was one of the risks encompassed by the statute or rule of law which imposed the duty.
The following method has been suggested for distinguishing between the duty element and the scope of protection element in negligence cases:
As is often the case with torts puzzles, a view through the prism of trial court procedure points toward a solution. Careful speakers will reserve the formulation, "defendant had no duty," for situations controlled by a rule of law of enough breadth and clarity to permit the trial judge in most cases raising the problem to dismiss the complaint or award summary judgment for defendant on the basis of the rule. On the other hand, if the case is of a sort such that typically the judge will need to know the details of the occurrence before ruling for defendanti.e., if the case is of a type that must normally reach the directed verdict (or later) stage before defendant can expect to prevailthen the appropriate formulation is in terms of [scope of protection].

*1349 D. Robertson, W. Powers, Jr. & D. Anderson, Cases and Materials on Torts 161 (1989). The authors therefore submit that the duty element normally comes into question when there is a categorical rule excluding liability as to whole categories of claimants or of claims.... On the other hand, the scope of protection element comes in question when there is a fact-sensitive case that may require limitation of the "but for" consequences of the defendant's substandard conduct. Determination of the scope of protection issue is not based on a categorical rule, but on a case-by-case decision whether liability should be imposed under the particular circumstances. D. Robertson, supra, at 163.
(Citations omitted)
Persilver alleges the following acts by the City and its police officers constituted negligence:
1. Failure of Defendant, through its agents, two City of Franklin police officers, to properly exercise its responsibility to Petitioner in that it failed to take Petitioner into custody or take him home when it had the opportunity and after it was aware that Petitioner was a danger to himself and others;
2. Failure to use proper police technique in handling the situation at the Drink Factory;
3. Failure to properly train its police officers relative to protecting the public and responding to situations such as petitioner's;
4. Negligently failing to insure that the petitioner would not obtain his car keys, or that petioner [sic] would be brought home safely, having seen petitioner' [sic] condition.
Essentially, these factual allegations assert that the City and its police officers breached their duties (1) to bring Persilver home, (2) to arrest him (take him into custody), (3) to prevent him from committing a crime (driving while intoxicated), and (4) to use the proper police technique in handling the situation (receive proper training).

General Duties of Police Officers
Pursuant to Louisiana statutory law and jurisprudence, a police officer is a person who has been authorized and empowered by a governmental entity (the City herein) to perform duties which relate to the governmental function of maintaining peace and order. Nichols v. Nichols, 556 So.2d 876 (La.App. 2d Cir.), writ not considered, 561 So.2d 92 (La.1990); Kendrick v. City of Lake Charles, 500 So.2d at 870; Tezeno v. Maryland Casualty Company, 166 So.2d 351 (La.App. 3rd Cir.1964). The peacekeeping aspect of a police officer's duties includes routine patrolling, investigating and answering of emergency calls. McElveen v. State, Municipal Police Employees Retirement System, 399 So.2d 664 (La. App. 1st Cir.1981). Along with the duty to maintain peace and order, a police officer has a duty to prevent crime, enforce the law and protect the citizenry. Nichols v. Nichols, 556 So.2d at 878; Smith v. City of Kenner, 428 So.2d 1171 (La.App. 5th Cir. 1983); Tezeno v. Maryland Casualty Company, 166 So.2d at 356. More specifically, a police officer's duties include making arrests, performing searches and seizures, executing criminal warrants, preventing and detecting crime and enforcing the penal, traffic and highway laws of this state. La.R.S. 40:2402(1)(a); La.R.S. 40:1379; Fusilier v. Russell, 345 So.2d 543 (La.App. 3rd Cir.), writ denied, 347 So.2d 261 (La. 1977); Tezeno v. Maryland Casualty Company, 166 So.2d at 355-356. Police officers in Louisiana have a duty to successfully complete a certified training program and pass a comprehensive examination within one calendar year from the date of their initial employment. La.R.S. 40:2405(A).

Duty to Take Persilver Home
Our research has not revealed any jurisprudence or statute (and none has been cited to us) which would impose a duty upon a police officer to bring an intoxicated bar patron home. When determining the existence or scope of a duty, a *1350 court "should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident." Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285 (La.1991). A duty to bring an intoxicated bar patron home would place a great burden on police departments and officers and would inhibit them from fulfilling their other duties of preventing crime and arresting criminals. The economic and social factors involved in this case do not warrant imposition of such a duty. Accordingly, we hold as a matter of law that the City's police officers did not owe a duty to Persilver to take him home.

Duty to Arrest Persilver
Persilver asserts the police officers negligently failed to arrest him.[4] An arrest is defined in La.C.Cr.P. art. 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
A police officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Shepherd, 470 So.2d 608 (La.App. 1st Cir.1985).
Persilver's petition states that the City's police officers were called to the Drink Factory to control his conduct because he was intoxicated and a danger to himself and others. This would appear to allege a violation of La.R.S. 14:103(A)(3), disturbing the peace, a misdemeanor offense.[5] These police officers did not arrest Persilver. Instead, they viewed the situation, gave his car keys to a friend and left. Even if the City's police officers had probable cause to arrest Persilver for disturbing the peace, they had the discretion to give him a written summons instead of making an arrest because disturbing the peace is a misdemeanor. La.R.S. 14:2(4) and (6); La. C.Cr.P. arts. 211 and 933(3) and (4); State v. Molinario, 383 So.2d 345 (La.1980). The issuance of a summons would not have prevented Persilver's accident from occurring. Because of limitations placed by federal courts on state jails, the utilization of written summonses has become more prevalent.
Even if the City's police officers had a duty to arrest Persilver for disturbing the peace, this duty did not encompass the risk that Persilver would get his car keys back from his friend, leave the bar, drive a vehicle while intoxicated and injure himself in a single car accident. The purpose of incarceration (custody) after arrest for a crime is to assure the presence of the accused for trial; it is not intended to protect the criminal from injuring himself. Frank v. Pitre, 353 So.2d 1293 (La.1977); Jacoby v. State, 434 So.2d 570 (La.App. 1st Cir.), writ denied, 441 So.2d 771 (La. 1983). *1351 Further, disturbing the peace is a bailable offense. La. Const. of 1974, art. I, § 18; La.C.Cr.P. art. 311 et seq. Persilver had a right to post bail and obtain his freedom. Thereafter he would not be in police custody, and the police would not be responsible for his conduct, absent some special relationship. Any breach of the duty to arrest Persilver for disturbing the peace was not the legal cause of his injuries; his own voluntary intoxication and imprudent conduct was. We are not willing to make the public the insurer of an intoxicated bar patron under the facts alleged herein.

Duty to Prevent Persilver from Driving While Intoxicated
The City's police officers did not violate their duty to detect and prevent crime under the facts alleged. Persilver alleges the City's police officers had a duty to prevent him from driving while intoxicated (D.W.I.). This is true. However, this duty was fulfilled by the police officers when they took Persilver's car keys and gave them to a friend. It is not alleged that Persilver actually was driving a motor vehicle or attempting to do so at the time. The City's police officers had no duty to anticipate that Persilver would get his car keys back from his friend, commit the crime of D.W.I. and injure himself in a single car accident under the facts alleged. Louisiana's legislative branch of government has proscribed the crime of D.W.I. in La.R.S. 14:98. In La.R.S. 9:2800.1(A), the Legislature has declared the public policy that "... the consumption of intoxicating beverages ... is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself ...". Thus, the duty of a police officer to prevent the crime of D.W.I. is for the protection of the public (innocent third parties); we are not willing to extend it to protect the perpetrator from himself.

Duty to Use Proper Police Techniques
Persilver does not allege any facts which, if accepted as true, show that the City's police officers used improper police technique. The essence of Persilver's argument on this portion of the duty issue is that the City's police officers violated their duty to use proper techniques by failing to take him home, by failing to arrest him and by failing to keep him from driving while intoxicated. Because we hold as a matter of law based on the facts alleged that these duties were not violated, or that the risks involved were not within the ambit of the protection of the duties, there can be no violation of the duty to use proper police techniques.

Kendrick v. City of Lake Charles
The trial court and Persilver have relied on the Kendrick case. Kendrick is distinguishable from the instant case. In Kendrick, it was alleged (1) the decedent was arrested for D.W.I., (2) she posted bail, (3) thereafter the police gave her the keys to her vehicle, and (4) the police allowed her to obtain possession of and drive her vehicle while she was still intoxicated. In the instant case, Persilver was not arrested for D.W.I., it is not alleged that he was attempting to drive, his car keys were taken from him and given to a friend, and the police did not "allow" him to drive his vehicle while he was still intoxicated.
The City's assignment of error has merit.

AMENDMENT OF PETITION
La.C.C.P. art. 934 provides as follows:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
In Alexander and Alexander, Inc. v. State, through the Division of Administration, *1352 486 So.2d 95, 100 (La.1986), appears the following:
Under the provisions of La.Code of Civ.Proc. art. 934, it is mandatory that the trial judge permit an amendment to the petition when the grounds of the objection pleaded by the exception are of such a nature [as] might be removed by amendment....
As a general rule, the first `shall' in La.Code of Civ.Proc. art. 934 requires that the adverse party be given an opportunity to amend where there is a conceivable possibility that a cause of action may be stated.... However, the right to amend is not so absolute as to permit the same when such amendment would constitute a vain and useless act....
The judgment maintaining the exception of no cause of action in this case contains no order granting plaintiffs leave to amend their petition. We are of the opinion that, given the opportunity to amend, there is a possibility that plaintiff may be able to state a cause of action against defendants, and that the trial judge should have allowed such amendment. We will remand with the instructions that an order issue permitting plaintiffs to amend their petition, if they can, to state a cause of action, within a delay deemed reasonable by the trial court. [Emphasis added.]
We cannot say that there is no conceivable possibility that the petition could be amended to state a cause of action against the City. Accordingly, we must remand to the trial court for compliance with La.C.C.P. art. 934. Tucker v. Kelly, 506 So.2d 730 (La.App. 1st Cir.1987).

DECREE
For the foregoing reasons, the judgment of the trial court overruling the City's peremptory exception raising the objection of no cause of action is reversed. Judgment is rendered in favor of the City and against Persilver sustaining the exception. This case is remanded to the trial court with the instruction that an order be issued to Persilver to amend his petition to state a cause of action against the City, if he can, within a delay deemed reasonable by the trial court. Persilver is cast for the cost of this writ.
REVERSED, RENDERED AND REMANDED.
NOTES
[1] Prior to Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), it was the general practice in the courts of appeal that supervisory writs were not granted unless there was clear trial court error causing irreparable injury or an ordinary appeal would not be an adequate remedy in practical fact. A. Tate, Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul.L.Rev. 429 (1964). However, in Herlitz, courts of appeal were admonished to exercise supervisory jurisdiction when (1) the trial court judgment was arguably incorrect, (2) a reversal would terminate the litigation (in whole or in part) and (3) there was no dispute of fact to be resolved. The fact that there was an adequate remedy by review on appeal ceased to be a controlling criterion.
[2] The City's no duty argument is similar to the public duty doctrine. The almost universally cited authority for the public duty doctrine is Cooley on Torts, 4th Ed., Section 300 at page 385. Cooley states the following:

The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. `The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its performance.'
The Louisiana Supreme Court in Stewart v. Schmieder, 386 So.2d 1351 (La.1980) and Fowler v. Roberts, 556 So.2d 1 (La.1989) examined the public duty doctrine. See also Thomas v. State, 545 So.2d 632 (La.App. 4th Cir.), writ denied, 551 So.2d 639 (La.1989); Lott v. Landor, 452 So.2d 1266 (La.App. 1st Cir.), writs denied, 458 So.2d 119, 125 (La.1984). Although the public duty doctrine was criticized by the Louisiana Supreme Court in Stewart and Fowler, it was subsequently applied in police officer tort cases by numerous appellate courts. See for example Chance v. State, Department of Transportation and Development, 567 So.2d 683 (La.App. 3rd Cir.1990); Guidry v. Airport Authority for Airport District No. 1 of Calcasieu Parish, 558 So.2d 300 (La.App. 3rd Cir.1990); Nichols v. Nichols, 556 So.2d 876, 878-879 (La.App.1990); Zeagler v. Town of Jena, 556 So.2d 978 (La.App. 3rd Cir.), writ denied, 560 So.2d 14 (La.1990); Kendrick v. City of Lake Charles, 500 So.2d at 870; Lowe v. Patterson, 492 So.2d 110 (La.App. 1st Cir.), writ denied, 496 So.2d 355 (La.1986); Smith v. City of Kenner, 428 So.2d 1171, 1173-1174 (La.App.1983); Tompkins v. Kenner Police Department, 402 So.2d 276 (La.App. 4th Cir. 1981). The public duty doctrine is now codified in La.R.S. 9:2798.1. Winstead v. Ed's Live Catfish & Seafood, Inc., 554 So.2d 1237 (La.App. 1st Cir.1989), writ denied, 558 So.2d 570 (La.1990); Akins v. Parish of Jefferson, 529 So.2d 27 (La. App. 5th Cir.), writ denied in part, writ granted in part on other grounds, 533 So.2d 970 (La. 1988). See Industrial Risk Insurers v. New Orleans Public Service, Inc., 735 F.Supp. 200 (E.D.La.1990). The prior jurisprudence applying the public duty doctrine has been legislatively overruled and is inapplicable to this case. See Chance v. State, Department of Transportation and Development, 567 So.2d at 686, n.3; Nichols v. Nichols, 556 So.2d at 878, n. 1; Robertson, Tort Liability of Governmental Units in Louisiana, 64 Tul.Law Rev. 857, 864-871 (1990); Murchison, Local Government Law, Developments in the Law, 1984-1985, 46 La.Law Rev. 491, 526-529 (1986). Since neither party has raised La.R.S. 9:2798.1, we will decide the duty issue under the traditional duty-risk analysis.
[3] With the advent of comparative fault in Louisiana, two views have developed with reference to the continued validity of the duty-risk analysis in victim fault cases. In Comparative Negligence and the Duty/Risk Analysis, 40 La.L.Rev. 319 (1980), Professor Alston Johnson stated his view as follows:

For this purpose, tort cases may be divided into three broad categories: (a) those in which a defendant's duty extends to the protection of a plaintiff against his own carelessness; (b) those in which defendant is not liable because the plaintiff's conduct has produced a situation for which the law should not require a reasonably prudent person to prepare and respond; and (c) those that fall in neither category, in which the victim's fault and the defendant's fault may each be weighed in the balance.
(Emphasis added)
He stated that the duty-risk analysis is the proper vehicle by which to determine the issue of the applicability of contributory or comparative negligence. He also stated that contributory negligence (and thus comparative negligence) is not applicable to category (a) or (b) tort cases which involve legal questions, but is applicable to category (c) tort cases which involve factual questions. A second view has been expressed by Professor David W. Robertson in Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana, 44 La.L.Rev. 1341 (1984) as follows:
I believe that the Johnson view is mistaken. Virtually all of the considerations Johnson would relegate to judges as part of the dutyrisk question of law are properly left to triers of fact as part of their assessment of the degree of fault of the parties. It will be a rare case indeed in which the victim's fault should not diminish recovery, and an even rarer case in which the victim's fault should remove him entirely from the scope of protection of a duty that a defendant would have owed a similarlysituated but fault-free victim. The Johnson view and its natural ramifications have unfortunate implications for the reasoned development of comparative fault principles, especially in multiparty cases and strict liability cases.
(Footnote omitted)
See also D. Robertson, The Louisiana Law of Comparative Fault: A Decade of Progress, Vol. 1 Louisiana Practice Series, pp. 21-34 (1991). This court has chosen to follow the views expressed by Professor Johnson. See Burge v. City of Hammond, 509 So.2d 151 (La.App. 1st Cir.), writ denied, 513 So.2d 285 (La.1987); Efferson v. State, Through Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writs denied, 465 So.2d 722 (La. 1985); Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir.1984); Dulaney v. Travelers Insurance Company, 434 So.2d 578 (La.App. 1st Cir.1983).
[4] The usual claims in this area of the law are that the policeimproperly (falsely) arrested the plaintiff or improperly failed to arrest a third person who harmed the plaintiff. Compare O'Conner Hammond Police Dept., 439 So.2d 558 (La.App. 1st Cir.1983) and Zeagler v. Town of Jena with the instant case.
[5] La.R.S. 14:103(A)(3) provides as follows: § 103. Disturbing the peace

A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
. . . . .
(3) Appearing in an intoxicated condition; or
. . . . .
Whoever commits the crime of disturbing the peace shall be fined not more than one hundred dollars or imprisoned for not more than ninety days, or both.