2LOTTINGER, Chief Judge.
In these consolidated cases, plaintiffs, former candidates for judge, Division “G”, 22nd Judicial District Court, allege two causes of action for damages, one based on defendants’ alleged negligent failure to obtain preclear-anee under the Federal Voting Rights Act of 1965 for the Division “G” election and the second based on defendants’ alleged deprivation of plaintiffs’ civil rights, arising under 42 U.S.C. § 1983.
*1011 FACTS
On June 5, 1990, Governor Buddy Roemer approved Act 8 of the 1990 Legislature, which added numerous new Louisiana judge-ships, including the judgeship at issue in this case. As required by 42 U.S.C. § 1973c[1] of the Voting Rights Act, lathe Attorney General on June 14, 1990, submitted a copy of the law to the Chief Voting Section, Civil Rights Division, Department of Justice, requesting preelearance for the newly authorized offices. The submission requested prompt handling because the deadline for qualification of candidates was July 25, 1990, with the primary election set for October 6, 1990. Although preclearance was not obtained prior to October 6, 1990,[2] the primary election was held with Larry Green and Lane Carson finishing first and second.[3] Four days prior to the November 6,1990 runoff election, the United States Supreme Court enjoined conduction of the election. Clark v. Roemer, 498 U.S. 953, *1012 111 S.Ct. 376, 112 L.Ed.2d 390, modified, 498 U.S. 954, 111 S.Ct. 399, 112 L.Ed.2d 391 (1990).
Preclearance was eventually obtained and a special general election for Division “G” was scheduled for November 3, 1992. Approximately two months prior to the special election, Carson voluntarily withdrew. After Carson’s withdrawal, the uLouisiana Secretary of State declared that Larry Green was elected district judge for Division “G”.
Plaintiffs filed suit in July and August of 1991[4], naming as defendants, Governor Buddy Roemer, Attorney General William Guste, Jr., Secretary of State Fox McKeithen, and the State of Louisiana. Before the cases were consolidated, defendants filed peremptory exceptions raising the objections of no cause of action and no right of action. The district court granted the exceptions as to the Governor and the Secretary of State, but denied the exceptions as to the Attorney General.
Motions for summary judgment were then filed by plaintiffs and the Attorney General. The court granted summary judgment in favor of the Attorney General. Plaintiffs appeal' asserting that “the district court erred as a matter of law in granting the Attorney General’s Motion for Summary Judgment, and thereby allowing evasion of the Voting Rights Act of 1965.”[5]
PLAINTIFFS’ NEGLIGENCE CLAIM
Plaintiffs allege that the Attorney General was negligent in failing to obtain preclearance as required by the Voting Rights Act. Specifically, the petitions allege that the Attorney General “was required to seek and obtain preclearance”, and “failed to obtain ... preclearance and/or failed to institute ... action for declaratory judgment, as is required by the Voting Rights Act.”
The elements of negligence are set forth in Persilver v. Louisiana Department of Transportation, 592 So.2d 1344 (La.App. 1st Cir.1991). To prevail in a negligence action, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant’s conduct failed to conform to the appropriate standard; (3) the defendant’s | .^substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) the defendant’s substandard conduct was the legal cause of the plaintiffs injuries; and (5) actual damages. Id. at 1347.
“When determining the existence or scope of a duty, a court ‘should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiffs conduct at the time of the accident.’” Id. at 1349-50 (quoting Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285 (La.1991)).
The Voting Rights Act does not create a duty owed to candidates for office. The purpose of the Voting Rights Act is to protect minority voters, not candidates for office. Roberts v. Wamser, 883 F.2d 617, 621 (8th Cir.1989). Plaintiffs have failed to cite any case law which supports imposing a duty under the Voting Rights Act on the Attorney General with respect to these candidates.
Nor do we find any factors to support a finding that the Attorney General owed a duty to these candidates to advise and project them against the risks inherent in entering an election under these circumstances. Plaintiffs, experienced attorneys, should have been aware of the requirements of the Voting Rights Act. They also should have been on notice, through the Clark v. Roemer litigation, that the election was not precleared. See Clark v. Roemer, 500 U.S. 646, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991); Clark v. Roemer, 751 F.Supp. 586 (M.D.La.1990). We note that the Supreme Court, in Clark, *1013 found that “the candidates [in Louisiana’s unprecleared judicial elections] had been on notice of the alleged § 5 violations since appellants filed their July 1987 amended com-plaint_ [E]very participant in the process knew for over three years that the challenged seats were unprecleared, in violation of § 5.” Clark, 500 U.S. at -, 111 S.Ct. at 2101.
Plaintiffs knew that the judgeship had not been precleared, but nevertheless, they chose to participate in the election. Based on the above law and policy, we hold that the Attorney General owes no duty to these plaintiffs. Absent a duty on the part of the Attorney General, there can be no negligence.
Though we agree with the result reached by the trial judge in rendering issummary judgment, we note on our own motion, La. Code Civ.P. art. 927, that inasmuch as there is no duty owed by the Attorney General to individual candidates to preclear judicial positions, we conclude plaintiffs failed to state a cause of action. Thus, the trial court should have maintained the peremptory exception raising the objection of no cause of action.
DECREE
For the above and forgoing reasons, the judgment of the trial court is affirmed at plaintiffs-appellants’ costs.
AFFIRMED.

.42 U.S.C. § 1973c provides:
Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the third sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1972, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made. Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General’s failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.

. On July 23, 1990, two days prior to the qualification deadline, in a legal action unconnected with this case, a motion was filed in federal district court to enjoin non-precleared elections for numerous judgeships, including Division “G”. See Clark v. Roemer, 500 U.S. 646, -, 111 S.Ct. 2096, 2099, 114 L.Ed.2d 691 (1991). On September 28, 1990, the district court denied the motion to enjoin the elections, but did enjoin winning candidates from taking office pending further orders. Id. at -, 111 S.Ct. at 2099-2100.

. The election results were as follows:
Candidate Number of Votes Percentage of Votes
Green 22,194 38%
Carson 14,159 24%
Hedges 13,018 22%
Krebs 5,984 10%
Simmons 3,745 6%

. Wilson C. Krebs, Patricia T. Hedges, and John R. Simmons, Sr. filed suit on July 26, 1991. Lane A. Carson filed his cause on August 19, 1991. The cases were consolidated on January 7, 1992.

. In brief, plaintiffs present arguments only on the negligence issue. Because plaintiffs failed to present arguments in support of their 42 U.S.C. § 1983 civil rights claim, we consider that issue abandoned in accordance with Rule 2-12.4, Uniform Rules, Court of Appeal.