594 So.2d 918 (1991)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT
v.
LOUISIANA NATIONAL BANK, Trustee for Eleanor H. Parker Trust, et al.
No. CA 90 1501.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
Rehearing Denied March 13, 1992.
Jerry F. Davis, Baton Rouge, for plaintiff-appellee, State of La., DOTD.
Ben F. Day, Baton Rouge, for intervenor-appellee, K & D Rent All and Hardware, Inc.
Alexis A. St. Amant, Baton Rouge, for defendant-appellant, Hibernia Nat. Bank, Trustee for Eleanor H. Parker Trust.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
At issue in this expropriation proceeding is the ownership of additions to buildings *919 owned by the lessor which were constructed by the sub-lessee. The trial court ruled that at the time of the taking, the additions were owned by the sub-lessee; we affirm.

FACTS
In March of 1983, the Department of Transportation and Development instituted this expropriation proceeding, seeking to expropriate property along Old Hammond Highway in Baton Rouge, Louisiana, to widen it into a four lane highway. Named as one of the defendants was Louisiana National Bank, the Trustee of the Eleanor H. Parker Trust.[1] Mrs. Eleanor Parker Adam owned approximately four acres of property fronting Old Hammond and Airline Highways. K & D Rent-All and Hardware, Inc. (K & D), which carried out its business on a portion of the property owned by Mrs. Adam, intervened in the expropriation proceeding.
The record shows that on July 1, 1969, Mrs. Adam leased nearly four acres on Old Hammond Highway to Albany Lumber Company, executing a written lease. That same day, Albany Lumber Company executed a sub-lease, leasing part of that property to K & D Enterprises, Inc. (K & D Enterprises, Inc. transferred its interest in the lease to its president, Imon Knippers, in April of 1974. Mr. Knippers sub-leased the property to K & D on May 1, 1981). Two buildings, owned by Mrs. Adam, were on the property at the commencement of the lease; K & D used one of the buildings to carry out its equipment sales and rental business and the other as an office building and for storage. Beginning in 1971 and continuing up to the time of the taking, K & D constructed additions to the existing buildings as its business grew. According to the trial court, the existing buildings contained 3,630 square feet; at the time of the taking, they contained 11,740 square feet. Thus, K & D added on 8,110 square feet to the original buildings.[2]
In its petition in intervention, K & D sought, among other things, to be recompensed for the loss to the value of its leasehold, the loss of its business and the costs to construct additional parking, which the taking had greatly diminished. It did not seek severance damages for the damage to the buildings. After a jury trial was held, the jury assessed severance damages to the buildings in the amount of $30,000.00. The trial court ruled that the trust was entitled to recover only 30.92% of these damages, or $9,276.00, finding that K & D, not Mrs. Adam, was the owner of the additions to the existing buildings at the time of the taking in March of 1983. This allocation was based on the percentage of square footage of the buildings at the outset of the lease and the percentage of square footage at the time of the taking. The trust perfected this appeal, contending that the trial court should have found Mrs. Adam to be the owner of the additions and should therefore have awarded the trust the entire $30,000.00 severance damages rather than only a portion of those damages.
At issue is the ownership of the additions constructed by K & D on the buildings owned by Mrs. Adam. The trust argues that Mrs. Adam, the owner of the ground, is presumed to be the owner of the additions under La.Civ.Code art. 491, claiming that there is no recorded instrument evidencing separate ownership. The trust also contends that Mrs. Adam is the owner of the additions under La.Civ.Code art. 493, which provides that buildings and other constructions permanently attached to the ground made on the land of another with the landowner's consent belong to the one who made them, but belong to the landowner *920 when made without his consent. It points to Mrs. Adam's testimony in which she stated that she did not give anyone permission to build additions to her buildings and expressed her belief that she was the owner of the additions.[3] It also relies on the testimony of one of K & D's representatives that K & D's owners believed that Mrs. Adam owned the additions and they had no interest in claiming ownership of them. Finally, the trust argues that even if Mrs. Adam did consent to the additions, under La.Civ.Code art. 493.1, she owns them because they are "component parts" of the immovable and belong to her as the owner of the immovable.
However, the trial court found that the lease contained a provision governing the ownership issue and relied on it in ruling that K & D was the owner of the additions. The original lease executed between Mrs. Adam and Albany Lumber Company provided:
Lessor takes cognizance of the fact that the Lessee anticipates the necessity of constructing buildings, and other improvements on said leased premises, and said Lessor does hereby waive and relinquish his vendor's lien and privilege on any buildings erected by the Lessee, and does hereby agree that any improvements, whether it be building, or other structures erected by the Lessee shall not become part of the real estate, or immovables by destination, and does hereby waive, relinquish, and subordinate their lessor's lien and privilege to any mortgages obtained or to be obtained for the construction of said improvements so erected by the said Lessee, and specifically agree that said improvements would not become part of the real estate.
The original lease is silent on the right of the original lessee to sublease the leased premises; therefore, the right to sublease existed. La.Civ.Code art. 2725. With respect to the original lease existing between the landowner and the original lessee, a sub-lessee exercises those rights under that lease through the original lessee. Ducote v. Callico, 307 So.2d 644 (La. App. 4th Cir.), writ denied, 309 So.2d 337 (La.1974). Under the original lease, the landowner clearly consented to the construction of improvements on the leased premises and relinquished ownership of those improvements. The lease arrangement contemplated that the lessee would construct improvements on the leased property and that the lessee would be the owner of those improvements. This provision inured to the benefit of the sub-lessee, who under the unambiguous terms of the lease, became the owner of the improvements, or additions, that it constructed on the existing immovable property. We therefore agree with the trial court's ruling that the lease provision controls the resolution of the ownership issue and find that the sub-lessee owned the additions at the time of the taking.
Based on the foregoing, we affirm the judgment of the trial court. All costs are assessed to defendant, Hibernia National Bank, trustee for the Eleanor H. Parker Adam Trust.
AFFIRMED.
NOTES
[1] After she executed the lease involved in this case, Eleanor Parker placed the subject property in the Eleanor H. Parker Trust, which was administered by Louisiana National Bank. On January 8, 1990, she revoked the trust and created the Eleanor H. Parker Adam Trust, naming Hibernia National Bank as the trustee. Hibernia National Bank was thereafter substituted as the proper party defendant in this proceeding. For the purpose of this appeal, we shall refer to the owner of the subject property and original lessor as "Mrs. Adam."
[2] The trust does not challenge this determination, but contests the trial court's ruling to the extent that it did not find Mrs. Adam to be the owner of the additions at the time of the taking.
[3] We note that Mrs. Adam also testified that she did not object to the additions. The record also shows that K & D demolished both buildings without asking Mrs. Adam's permission. At the expiration of its lease, K & D allowed someone to tear down the building it operated as its place of business and then removed the remainder of the building from the property without obtaining the landowner's permission.