JaSHORTESS, Judge.
Neomar Resources, Inc. (plaintiff) sued Amerada Hess Corporation (Hess) and Amoco Production Company (Amoco) (collectively, defendants) for breach of contract.[1] Defendants filed peremptory exceptions of no cause and no right of action. At the initial hearing on the exceptions, the trial court granted the exception of no cause of action but gave plaintiff forty-five days to amend its petition. The court did not rule on the exception of no right of action at that hearing, stating:
And I am not going to do anything with the no right of action until I have finally disposed of the no cause of action. Because if I find that there is a cause of action, then certainly they have a right of action.
After plaintiff amended its petition twice, the exceptions were re-urged. The trial court granted both exceptions and dismissed plaintiffs suit against them. Plaintiff appeals.
The peremptory exception of no cause of action questions whether the law affords any remedy to the plaintiff under the allegations of the petition. Persilver v. Louisiana Dept. of Transp., 592 So.2d 1344, 1347 (La.App. 1st Cir.1991); La.C.C.P. art. 931. It is triable solely on the face of the petition and any attached documents. Evans v. Waguespack, 93-1709 (La.App. 1st Cir. 6/24/94), 638 So.2d 1153, 1156. All pleaded facts are accepted as true, and any reasonable doubt as to the legal sufficiency of the petition must be resolved in favor of finding the petition states a cause of action. Persilver, 592 So.2d at 1347; White v. State, 569 So.2d 1001 (La. App. 1st Cir.1990).
The peremptory exception of no right of action raises the question of whether a remedy afforded by law can be invoked by |3the plaintiff and determines if the plaintiff has a right or legal interest in the subject matter of the suit. Giannouleas v. Phoenix Maritime Agencies, 621 So.2d 1131,1133 n. 6 (La.App. 1st Cir.1993).
Plaintiffs petition, as amended, alleged that Richard Hamilton entered into a mineral lease with the State of Louisiana; that all of the contractual rights obligating the parties herein stem from that lease; that Hamilton assigned the lease to Amoco; that Amoco subleased to plaintiff a working interest in the lease to a depth of 12,000 feet; and that Amoco assigned fifty percent of the rights to the formations below 12,000 feet to Hess.
Plaintiff further alleged that defendants began drilling a well with a target depth of 18,000 feet; that an electric log run by defendants revealed the presence of hydrocarbons in paying quantities in the portion of the formation leased by plaintiff; and that when defendants found no commercial hydrocarbons in their portion of the lease, plaintiff requested authority from Amoco to use the well bore.
Plaintiff further alleged that it was ready, willing, and able to take over the bore; that Amoco communicated the request to Hess; that Hess failed to respond; that instead defendants permanently plugged and abandoned the well; that plaintiff conveyed its interest in the lease to a subsidiary, Neomar *1068 Geophysics, Inc., to drill a twin well on the site, reserving its rights to sue Amoco and Hess; and that the twin well was successful and has produced more than 80,000 barrels of oil.
Since this is a breach of contract action, plaintiff must show some contractual obligation defendants owed to it. Plaintiff admits in brief that there is no express provision in its sublease with Amoco which required Amoco to donate the well to plaintiff if the well was unproductive in defendants’ strata. Plaintiff contends, however, that defendants breached Utheir obligations to act as reasonably prudent operators and violated public policy against waste and inefficiency. Plaintiff further contends that under Louisiana property law the well easing became a component part of the land which was available to any entity having a right to use the property.
The reasonably prudent operator standard is set forth in Louisiana Revised Statute 31:122, which provides in pertinent part: “A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor.” Plaintiff contends a reasonably prudent operator would have tested and completed the well in the shallow formation. It further contends that because it had the sole right to complete the well in its zone, defendants should have donated the well to plaintiff. By failing to do so, plaintiff contends, defendants breached their obligation to act as reasonably prudent operators.
The flaw in plaintiffs argument is that defendants had no duty to act as a prudent operator toward plaintiff. Under the statute, the lessee owes a duty to the lessor; the obligation is not reciprocal. In other words, the obligation flows from the lessee to the lessor and not vice versa. Defendants, as lessees, and plaintiff, as subles-see, had obligations to act prudently toward the State. Plaintiff also had a duty to act as a prudent operator toward defendants. However, defendants had no obligation to operate the lease for the mutual benefit of plaintiff and themselves.
Plaintiff further argues that under Revised Statute 31:129 defendants were not relieved of their obligations under the lease to act as prudent operators to develop the portion of the property leased to plaintiff. It is true that the resolution of the State Mineral Board approved the sublease between these parties (Neomar and Amoco) subject to the | gcondition that “all terms and conditions of the basic lease will be fulfilled ... regardless of the division of leasehold interests resulting from the instrument.” However, any right to complain of the failure of the lessee to comply with the provisions of the lease belongs to the lessor, i.e., the State, not to plaintiff. Plaintiff’s reasonably prudent operator theory fails to support either a cause or right of action by plaintiff against defendants.
Plaintiffs argument that defendants’ action violated public policy against waste and inefficiency in the extraction of natural resources is also flawed. Taking plaintiffs allegations as true, plaintiff was financially damaged because defendants refused to donate their well casing to it, forcing plaintiff to drill another well. While this may have been inefficient from plaintiffs standpoint, it does not rise to the level of breach of contract unless plaintiff can show some contractual obligation of defendants to give plaintiff their well. If a cause of action exists for violation of public policy against waste, the right to bring it would lie with the State, not with plaintiff.[2]
Finally, plaintiff contends that because the well is an integral part of the land under Louisiana Civil Code article 465, it is owned by the State as landowner, and as a subles-see plaintiff had the right to use the well. Plaintiff further contends that even if the State does not own the well, the lessor could not refuse to let the lessee enjoy an improvement on the leased premises.
*1069 General property laws do not prevail over express provisions in a contract of lease. See State v. Louisiana Nat’l Bank, 594 So.2d 918 (La.App. 1st Cir.1991), writ denied, 600 So.2d 608 (La.1992). The original lease from the State gives the lessee the right to draw and remove well casings for up to one year after termination of the lease, after which time the casings become the property of the State. That time period has not yet expired.[3] Thus, the State did not own the well casings at the time plaintiff desired to use them.
Furthermore, we do not agree with plaintiffs argument that a lessee is always entitled to enjoy improvements on the leased premises. The rights of a sublessee are governed by the terms of the sublease. In this case, the sublease was entered into before the improvement (the well bore) was made, and there is no agreement in the sublease that plaintiff would have the right to use any future improvements to the property-[4]
After reviewing the pleadings and all attached documents, we find plaintiff was not given the right either expressly or impliedly to use the well. Thus, plaintiff has failed to state a cause of action for breach of the sublease.
For the foregoing reasons, we find the trial court did not err in granting defendants’ peremptory exceptions of no cause of action and no right of action. The decision of the trial court is affirmed at plaintiffs costs.
AFFIRMED.
CARTER, J., concurs with reasons.

. Plaintiff added the State of Louisiana, through the State Mineral Board, as a defendant in its second supplemental and amending petition. However, the record before us reflects no answer or other appearance by the State.

. We note that the record reflects no damage to the State by the drilling of a duplicate well because the lease agreement provides that the lessee shall not deduct from the State's royalty payments any operating or production costs. Furthermore, no natural resources were lost because production was successful from the twin well.

. The lease was executed on April 12, 1989, for a five-year term.

. Suppose an individual leased the right to use raw land, at a price based only on the use of the land, and the lease contained no provision permitting the lessee to use future improvements to the land. If the lessor later built a house on the land, the lessee would not have the right to use the house absent some agreement with the lessor.