558 So.2d 300 (1990)
Karl GUIDRY, et ux, Plaintiffs-Appellants,
v.
AIRPORT AUTHORITY FOR AIRPORT DISTRICT NO. 1 OF CALCASIEU PARISH, Defendant-Appellee.
No. 88-1238.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
David J. Williams, Lake Charles, for plaintiffs-appellants.
Terry J. Manuel, Lake Charles, for defendant-appellee.
Before FORET, STOKER and KING, JJ.
STOKER, Judge.
This suit was filed by Karl and Trevis Gail Guidry against the Calcasieu Parish Airport Authority, Airport District No. 1, for damages sustained by Karl Guidry in a one-car accident on October 20, 1986. Trevis Gail Guidry claims damages for loss of consortium and lost wages. Karl Guidry alleges that defendant is liable for allowing him to drive while intoxicated. Defendant filed an exception of no cause of action which was denied by the trial court. After a trial on the merits, judgment was rendered in favor of defendant. Plaintiffs appeal this judgment.

FACTS
Guidry drank nine shots of tequila and nine beers after work on October 20, 1986 in the airport lounge. Guidry was subsequently found at approximately 7:30 p.m. lying unconscious on the ground next to his automobile in the airport parking lot. He was placed in his car by Calcasieu Parish Sheriff's Deputy Ken Langley and his car keys were taken from him. Langley was relieved at 9 p.m. by Deputy Duhon. These two deputies were employees of the Airport Authority. They are not defendants themselves. The Airport Authority is the sole defendant.
At about 10 p.m. Guidry returned to the airport terminal building and went to the Hertz counter, where Jody Boudreaux was working. Boudreaux, followed by Guidry, walked to the National counter where Claiborne Marcantel was working. Marcantel then accompanied Boudreaux to the security area where Deputy Duhon was on duty. Guidry followed them. Boudreaux informed Duhon that Guidry was bothering her and then returned to the Hertz counter. *301 Duhon allowed Guidry to retrieve his car keys and walked with him to his car.
Boudreaux testified that Guidry did not appear to be intoxicated at that time. Marcantel, Guidry's brother-in-law, testified that Guidry was walking well and speaking clearly. Duhon testified that Guidry appeared to be sober because his clothes were neat and he was walking and speaking in a normal manner. Duhon stated that he was not close enough to Guidry to smell his breath.
Guidry drove from the airport to Earl's Superette where he purchased a beer. After drinking the beer outside, Guidry reentered the store and attempted to buy another beer. The two store clerks testified that Guidry was noticeably intoxicated and refused to sell him another beer. Guidry left the store and shortly thereafter, at about 11 p.m., Guidry had a single car accident. Guidry's blood alcohol level was subsequently found to be .313 at the Lake Charles Memorial Hospital. Guidry remembers nothing except drinking in the airport lounge after work and waking up in the hospital the next day.
Guidry subsequently pleaded guilty to DWI first offense.

OPINION
Guidry contends on appeal that Deputy Duhon, as an employee of the Airport Authority, violated his duty to Guidry when he permitted him to regain possession of his vehicle and drive it while intoxicated. Guidry apparently argues that the duty owed him by the Airport Authority and its employees falls within the exception to the public duty doctrine. Under that doctrine, a governmental agency is freed from liability for an otherwise actionable offense if the offense is a breach of duty owed the general public, but conversely is not freed from liability if the duty is owed a particular class of individuals. McNeal v. Division of State Police, Dept. of Public Safety, 412 So.2d 1123 (La.App. 1st Cir.), writ denied, 414 So.2d 1252 (La.1982).
The duty of a police officer to an intoxicated individual was well analyzed in Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1st Cir.1986), as follows:
"Upon determining that Kendrick had been driving while intoxicated, Kendrick was arrested and later released on bond as provided by La.C.Cr.P. art. 312. Kendrick could not constitutionally be detained after posting bond (La. Const. art. I, § 18), therefore, the breach of duty, if any, was in failing to impound Kendrick's vehicle or in allowing her to retain access to her vehicle while still intoxicated.
"Any peace officer or state policeman may impound a vehicle which is operated by a person driving under the influence of alcohol. See La.R.S. 32:391 C and La.R.S. 32:392. Municipalities have the authority to adopt a traffic code. La. R.S. 33:1361 and La.R.S. 33:1368. The municipality may provide for the seizure or holding of a motor vehicle by a municipal police officer for the violation of any municipal traffic ordinance or regulation. La.R.S. 32:472.
"We assume that the L.C.P.D. was not required by municipal ordinance to impound Kendrick's vehicle. The L.C.P.D. was not required by statute to seize Kendrick's vehicle. The duty to impound the vehicle, if any, was discretionary.
"`[T]he mere fact that a duty is of a public nature, and benefits the general public, does not require a conclusion that the city cannot be found liable for the breach of that duty.' Stewart v. Schmieder, 386 So.2d 1351, 1358 (La. 1980). The duties of members of a city police department relate to its governmental function of maintaining public order. Tezeno v. Maryland Casualty Co., 166 So.2d 351 (La.App. 3d Cir.1964). When a public official breaches a duty which is owed to the public in general, such breach of duty generally does not result in liability to an individual. However, where a personal or individual relationship (one-to-one relationship) arises between the police officer and an individual, liability may be imposed for breach of a duty owed by the police officer to the individual. Serpas v. Margiotta, 59 So.2d 492 (La.App.Orl.1952). A duty *302 owed to the public in general may be transformed into a duty owed to an individual through closeness in proximity or time. Once the personal or individual relationship has been established, the police officer then becomes obligated to conduct himself in such a way as not to cause the individual unnecessary injury. Tompkins v. Kenner Police Department, 402 So.2d 276 (La.App. 4th Cir. 1981)." 500 So.2d at 870.
In Kendrick, the court held that plaintiff's petition stated a cause of action in that, under the pleaded facts, a one-to-one relationship was established between plaintiff and the police through her arrest for DWI.
In Lowe v. Patterson, 492 So.2d 110 (La. App. 1st Cir.), writ denied, 496 So.2d 355 (La.1986), suit was brought against the parish sheriff's office to recover for injuries sustained by a high school student who was run over by a car while lying intoxicated in the parking lot outside a high school dance. The court held that the parish sheriff's office was not liable for the failure of the deputies who were assigned to the dance to detect the presence of the student before he was run over. The court found that plaintiffs failed to establish a one-to-one relationship (a special duty) outside of the one owed to the general public.
Finally, in Fusilier v. Russell, 345 So.2d 543 (La.App. 3d Cir.), writ denied, 347 So.2d 261 (La.1977), an action was brought by an injured automobile passenger for personal injuries sustained when the automobile in which he was riding was struck from the rear by a highly intoxicated motorist. Plaintiff contended that the sheriff and two deputies were liable for failing to arrest the intoxicated motorist after they observed him staggering around a nightclub parking lot. The court held in favor of the defendant, finding that the deputies did not know the motorist had a car at the club and had not seen the motorist enter an automobile or leave the club area. In so holding, the court stated the officer's duty to make arrests as follows:
"We hold that a police officer's duty to make arrests is owed to the general public and not to individuals. Unless the plaintiff can prove facts which show that the defendant owed him a special duty outside of the one owed to the general public, he cannot recover. No such special duty was exhibited in this case." 345 So.2d at 546.
In the case before us we find that Guidry has failed to establish that defendant, through Deputy Duhon, owed him a special duty outside of the one owed to the general public. Duhon had been told by Deputy Langley that they were holding Guidry's keys while he slept and that he had been drunk earlier. However, Duhon encountered Guidry two and one-half hours after Langley found him asleep by his car, during which time Guidry had continued to sleep. At that time Guidry appeared sober to Duhon and two other witnesses. This was the extent of Duhon's contact with Guidry. We hold that Guidry has not shown the existence of a one-to-one relationship between himself and Duhon sufficient to establish a duty to arrest Guidry or to prevent him from driving home. Moreover, Duhon could not have known that Guidry would drive straight to a store after he left the airport and buy and consume more alcohol. We find that the sole responsiblity for Guidry's and his wife's damages lies with Guidry himself. We note that Guidry testified that he knew he was an alcoholic and had previously experienced blackouts from excessive drinking.

CONCLUSION
For the reasons given, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.