675 So.2d 1055 (1996)
Kathleen ARCHON, et al.
v.
UNION PACIFIC RAILROAD, et al.
MELTON TRUCK LINES
v.
MISSOURI PACIFIC RAILROAD.
Nos. 94-C-2728, 94-C-2743.
Supreme Court of Louisiana.
July 2, 1996.
*1056 Donald Coleman Brown, Woodley, Williams, Fenet, Boudreau, Norman & Brown, for Applicant (No. 94-C-2743).
Paul H. Due, Thomas M. Abrusley, Donald Wayne Price, Due, Caballero, Price & Guidry; James T. Guglielmo, Charles M. Jarrell, Guglielmo, Lopez, Tuttle, Hunter & Jarrell, for Respondent (No. 94-C-2743).

ON REHEARING
WATSON, Justice.
On original hearing, this court held that the Louisiana Department of Transportation and Development assumed a contractual duty to provide active warning signals at the Van-Ply crossing. Archon v. Union Pacific Railroad, 94-2728, 94-2743 (La. 6/30/95), 657 So.2d 987. Rehearing was granted to consider the DOTD's contention that the opinion erroneously equated active signals (automatic gates and flashing lights) with advance warning signs.
The rehearing issue is whether the DOTD assumed a duty to upgrade the Van-Ply crossing with active warning signals prior to Alvin Archon's death. The other issues were correctly decided in the court's original opinion.

FACTS
On June 16, 1989, truck driver Alvin Archon, was killed when a northbound Missouri Pacific train hit his sixty foot logging truck at the Van-Ply crossing outside of Oakdale, Louisiana. Archon was transporting plywood from the Van-Ply Road Boise Cascade plywood plant.
The Van-Ply Road runs parallel to U.S. Highway 165. It has heavy logging truck and pedestrian traffic because of the Boise Cascade plant. There had been previous accidents at the crossing, which had no active warning signals. Crossbucks advised vehicles about the double railroad tracks (one a spur). The main track carried twelve trains per day.
Archon was driving very slowly as he approached the tracks. A boxcar to his left blocked his view. Archon came to a complete stop at the first set of tracks and then started moving slowly. As Archon's truck accelerated onto the second track, it was hit by the train, killing Archon.
Following a bench trial, the trial court found as a fact that both the Parish and the DOTD knew the VanPly crossing was dangerous and required active signalization. The court assigned 36% fault to the Railroad, 32% to Archon, 22% to the DOTD, and 10% to the Police Jury. The trial court awarded $500,000 to Archon's widow; $250,000 each to the two minor children; and $200,000 each to the two major children, all reduced by Alvin Archon's comparative fault.
The DOTD and the Police Jury appealed. The Third Circuit Court of Appeal affirmed (modifying the judgment to adjust the prejudgment interest). Archon v. Union Pacific Railroad, 94-92, 94-93 (La.App. 3d Cir. 10/5/94), 642 So.2d 896. Writ applications were granted. After the court of appeal judgment was affirmed, this rehearing was granted to reconsider the duty issue.
On May 24, 1983, Michael J. Morgan, DOTD Agreements Engineer, wrote a letter to the railroad's chief engineer, stating that active signals were needed at the Van-Ply crossing, including flashing lights. Morgan had been the DOTD authority on railroad crossing upgrades since 1981. Morgan's letter *1057 recommended an on site inspection, a standard preliminary to a crossing upgrade. A site survey was ordered for June 1, 1983. Morgan admitted that upgrade decisions were within his discretion, and the railroads acted on his authority. He could not explain why the Van-Ply crossing was not upgraded until after the Archon accident. Neal L. Wagner, Secretary, DOTD, testified that projects are generally completed one and one-half to two years after the site survey.
Morgan testified that because there were two sets of tracks, the crossing should have been upgraded with automatic gates and flashing lights after it had been surveyed.
After close study, the DOTD's contention that the original opinion confused advance warning signs and active signals is unfounded. The original opinion's duty/risk basis is the DOTD's breach of its 1983 commitment to install flashing lights at the Van-Ply crossing. To quote:
DOTD's 1983 mandate that flashing lights be installed at the Van-Ply crossing reflects its familiarity with the site and recognition of the need to provide more adequate warning devices to protect the motoring public. Archon at 8, 657 So.2d at 992.
Further,
we focus our causation analysis on whether DOTD's failure to honor its own 1983 commitment to install flashing lights at the crossing was a cause-in-fact of Archon's death. Archon at 10, 657 So.2d at 993.
The DOTD assumed the duty of upgrading the Van-Ply crossing when it ordered its June 1, 1983 site survey. As Morgan testified, the crossing should have been upgraded with flashing lights and automatic gates after the survey. The DOTD's failure to upgrade the crossing between 1983 and this 1989 accident breached its duty to the motoring public. See Rick v. State, DOTD, 93-1776, 93-1784 (La. 1/14/94), 630 So.2d 1271. The trial court found that breach to be a cause in fact of Alvin Archon's death. The trial court's factual finding that the DOTD's conduct was a cause of the harm is not clearly wrong.
For the foregoing reasons and the reasons assigned in the original opinion of this Court, the judgement of the Court of Appeal is affirmed.
AFFIRMED.
MARCUS, VICTORY and KIMBALL, JJ., dissent.
LEMMON, J., concurs and assigns reasons.
LEMMON, J., concurring.
The Rick case and the present case are both negligence cases. Although I was not on the Rick panel under the temporary eight-member system of this court's composition, I tend to disagree with the finding of negligence in the Rick decision.
In Rick the negligence of the DOTD was in failing to select the particular crossing for earlier upgrade "because the DOTD negligently assigned it [the crossing] a low hazard index."[1] 630 So.2d at 1276. The theory of liability was that if DOTD had assigned the correct hazard index, the crossing would have been selected for improvement many years earlier, and Rick's death would have been prevented with earlier improvement of the crossing. As I tend to view the Rick decision, DOTD's duty to improve the particular crossing within a reasonable time arose when the particular crossing was selected for improvement by the means of a process which included numerous factors for consideration.[2]
In the present case, the particular crossing was selected for improvement in May 1983, as shown by the letter of Michael Morgan, DOTD's agreement engineer, which stated that "[a] new rubber pad grade crossing with subbase treatment and flashing lights at the Van Ply location will be required." *1058 (emphasis added). According to Morgan's testimony, once the DOTD selected a particular crossing for improvement and the on-site inspection was conducted,[3] the federal government, never refused to approve the financing of the improvement and the railroad never refused to perform the work on the crossing that was paid through governmental funds.
The negligence of DOTD in the present case, after selecting the particular site for grade improvement and installation of flashing lights and knowing that the federal government would approve the financing and the railroad would perform the construction, was in failing to include the installation of flashing lights in the project notice issued on July 23, 1983. The project notice, resulting from Morgan's May 1983 letter and from the on-site inspection of June, 1983, only called for the improvement of the grade crossing. Morgan, who had complete authority at DOTD to make these decisions, explained that the installation of flashing lights simply "fell through the cracks."
In my view, once DOTD selected a particular crossing for improvement, it had the duty to issue the project notice that included the recommendations indicated the selection process. Here, DOTD was clearly negligent in failing to include in the project notice the very recommendation that was one of the two bases for selection of this particular crossing for improvement. The trial court found as a fact that failure to improve the crossing was a cause-in-fact of this accident, and the fatal injury to Archon was within the scope of the duty of DOTD to include installation of flashing lights in the project notice for the Van Ply crossing.
NOTES
[1] The erroneous hazard index, which caused other crossings with a high index to be improved first, resulted from DOTD's error in using non-current and inappropriate data for its selection process.
[2] The Rick decision also held DOTD negligent for not monitoring the railroad's response to DOTD's selection of the crossing for improvement. This factor is not involved in the present case.
[3] The on-site inspection was apparently conducted on June 1, 1983, the date scheduled in Morgan's letter, because DOTD on July 23, 1983 issued a project notice pursuant to the on-site inspection.