It SAUNDERS, Judge.
This is an appeal from a summary judgment granted in favor of the City of DeRid-der, Louisiana. For the following reasons, we affirm the decision of the trial court.

FACTS

On April 9, 1995, at approximately 4:00 p.m., Winston Shepard joined into a game of pickup basketball at Northside Park in the City of DeRidder, Louisiana. During the course of the evening, he observed some drinking by other people in the area and became involved in a verbal altercation with another player. The situation ^quickly escalated, and Shepard was beaten by five of the other park patrons. As a result of the attack, Shepard suffered several injuries including knife cuts to the face, chest, hand and arm.
In his amended petition, Shepard alleges that his injuries were caused by the negligence of the City of DeRidder in failing to patrol Northside Park, failing to protect the public from persons with a propensity for violence, failing to maintain proper lighting, and failing to maintain the premises in a safe manner. He also alleged claims arising under 42 U.S.C. §§ 1981, 1983. The City of DeRidder filed a motion to strike the jury and motion to strike punitive damages, which motions were not objected to by plaintiff and were subsequently granted by way of a consent judgment. The City of DeRidder also filed an exception of no cause of action as to claims under 42 U.S.C. §§ 1981, 1983, and a motion for summary judgment. The trial •court granted both the exception and the motion for summary judgment.
Plaintiff now appeals the trial court’s granting of the City of DeRidder’s motion for summary judgment.

DISCUSSION

Where summary judgment is sought by one not bearing the burden of proof at *1051 trial, every element of the adverse party’s claim need not be negated; rather, the mov-ant need only “point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense.” La.Code Civ.P. art. 966(C)(2). “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id. “The jurisprudential presumption against granting summary judgment has been legislatively overruled” and “the supporting documentation submitted by the parties fashould be scrutinized equally.” Hayes v. Autin, 96-287, p. 6 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.
Summary judgments are subject to de novo review on appeal and the reviewing court must ask the same questions as a trial court: “whether there is a genuine issue of material fact ... and whether the party is entitled to judgment as a matter of law.” Pendleton v. Barrett, 97-570, p. 7 (La.App. 3 Cir. 12/23/97); 706 So.2d 498, 502. A fact is “material” when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577 (La.1989). Simply put, a “material” fact is one that would matter at trial on the merits. Moore v. Esponge, 94-1192 (La.App. 3 Cir. 3/8/95); 651 So.2d 962, writ denied, 95-0907 (La.5/19/95); 654 So.2d 696.
To determine liability in a negligence action, a court must undergo a duty/ risk analysis wherein a plaintiff must prove each of the following elements:
(1) the conduct in question was the cause-in-fact of the resulting harm;
(2) defendant owed a duty of care to plaintiff;
(3) the requisite duty was breached by the defendant;
(4) the risk of harm was within the scope . of protection afforded by the duty breached.
Stroik v. Ponseti, 96-2897, p. 6 (La.9/9/97); 699 So.2d 1072, 1077. “Each element of the duty/risk analysis is dispositive, in that, if any one element is not present, liability cannot result.” Kniepp v. City of Shreveport, 609 So.2d 1163, 1168 (La.App. 2 Cir.1992), writ denied, 613 So.2d 976 (La.1993). In other words, in order for the plaintiff to prevail, all four prongs must be satisfied. Whether a duty is owed is a question of law. Blackwell v. St. Romain Oil Co., 94-917 (La.App. 3 Cir. 3/1/95); 651 So.2d 441.
[In the maintenance and operation of its public parks, playgrounds and recreational areas, a city-parish owes a duty commensurate with ordinary and reasonable care under the circumstances. Politz v. Recreation and Park Commission for the Parish of East Baton Rouge, 619 So.2d 1089 (La.App. 1 Cir.), writ denied, 627 So.2d 653 (La.1993); Sallis v. City of Bossier City, 28,483 (La.App. 2 Cir. 9/25/96); 680 So.2d 1333, unit denied, 96-2592 (La.12/13/96); 692 So.2d 376. In the case sub judice, the plaintiff alleges the following acts of negligence against the City of DeRidder:
(1) Negligently failing to patrol the “North Side Park”;
(2) Negligently failing to provide a mechanism to protect the public from and/or remove persons from the park with a history of and/or propensity for violence;
(3) Negligently failing to ensure that posted park rules are followed by the general public so that intoxicated and/or violent persons were not in the park attacking visitors;
(4) Negligently failing to maintain proper lighting for the area in which the attack occurred;
(5) Negligently failing to maintain the premises of “North Side Park” in a safe manner;
(6) Any and all other acts of negligence which may be proven at the trial of this matter.
In support of their contentions that the police were negligent in failing to patrol Northside Park on the date of the incident, plaintiff offers the testimony of Eureka Johnson, the plaintiffs girlfriend. In her deposition, Ms. Johnson testified that she did not *1052 see any police cars patrolling the park on that evening. Plaintiff also offers an “Index of Offense/Incident Reports from Northside Park.” This index compiles data from reported complaints to the DeRidder Police Department and alleged incidents that transpired at Northside Park from April 1993 to July 1995.
bArvin Malone, Chief of Police for the City of DeRidder, testified in his deposition that it is general practice to randomly patrol the city so as not to create a routine that could be used by the criminal element. He stated, “You want to alter your role patrolling the city so people don’t know what you’re going to do.” He also stated that variable circumstances such as the number of units available, the number of calls received on any given night and the population in different areas of the city determine how, when, and where the police may patrol. He also pointed out that no specific rules existed to govern the timing of patrols and that the police had an overall duty to cover the entire city, not just particular sections.
La.R.S. 9:2798.1 grants statutory immunity for policy-making or discretionary acts or omissions of public entities or their officers. La.R.S. 9:2798.1 provides in pertinent part that:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
The supreme court has adopted a two-part test for determining when the discretionary function exception applies. Alpha Alpha, Inc. v. Southland Aviation, 96-928 (La.App. 3 Cir. 7/9/97); 697 So.2d 1364, (citing, Archon v. Union Pac. R.R., 94-2728, 94-2743 (La.6/30/95); 657 So.2d 987). First, the court must determine whether the government’s action was a matter of choice. Id. If the action was not a ^matter of choice because some statute, regulation, or policy prescribed a specific course of action to follow, then the exception does not apply and there is no immunity. Id. If, on the other hand, the action involved an element of choice or discretion, then the court must determine whether that discretion is the type that is shielded by the exception because it is grounded in social, economic, or political policy. Id. It is only those actions that are based on public policy that are protected by La.R.S. 9:2798.1. Id.
In Kniepp, 609 So.2d 1163, the police chiefs decision to withdraw forces from a crowd where a homicide occurred and establish a perimeter to contain the disturbance was a discretionary, tactical decision to protect life, rather than property, for which the city was immune from liability for negligence. Likewise, in the present case, the patrol practices of the City of DeRidder are a matter of choice as no statute, regulation, or policy proscribed times or locations for patrol. These determinations are within the realm of discretionary functions grounded in social, economic and political policy, and therefore, the city is immune from liability for such decisions under La.R.S. 9:2798.1.
Plaintiff next claims that the city was negligent in failing to protect the public from persons with a history of and/or propensity for violence and failing to ensure that posted park rules were followed by the general public so that intoxicated and/or violent persons were not in the park attacking visitors. However, this claim is precluded by the public duty doctrine.
The public duty doctrine has been criticized in Louisiana jurisprudence. See Stewart v. Schmieder, 386 So.2d 1351 (La.1980). Nonetheless, Louisiana appellate courts have continued to apply the public duty doctrine in analyzing the conduct of law enforcement officers. See Hopkins v. Sovereign Fire & Casualty Ins. Co., 626 So.2d 880 (La.App. 3 *1053 Cir.1993), writs denied, 94-0154, 93-2958 (La.3/11/94); 634 So.2d 390, 402; Guidry v. Airport Authority for Airport District No. 1 of Calcasieu Parish, 558 So.2d 300 (La.App. 3 Cir.1990); and Nichols v. Nichols, 556 So.2d 876 (La.App. 2 Cir.), writ not considered, 561 So.2d 92 (La.1990).
Under the public duty doctrine, a governmental agency is freed from liability for an otherwise actionable offense if the offense is a breach of a duty owed to the general public; conversely, the agency is not freed from liability if the duty is owed to a particular class of individuals. Guidry, 558 So.2d 300. A duty owed to the public in general may be transformed into a duty owed to an individual through closeness or proximity in time. Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1 Cir.1986). The existence of a duty and the scope of liability resulting from a breach of that duty must be decided according to the facts and circumstances of the particular case. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
In Kendrick, 500 So.2d 866, suit was brought when the police allowed an arrestee to regain possession of her vehicle while she was still intoxicated, which resulted in a fatal accident. The court reversed the granting of summary judgment holding that the public duty doctrine would not provide a defense as a personal relationship arose between the police and the individual.
Under the facts of the case before us, plaintiff has not shown that a special duty was owed by the police officers of the City of DeRidder to the plaintiff through closeness in proximity or time. The police had no contact with the plaintiff prior to his attack, thus a one-to-one relationship has not been shown to have developed as between the jailer and arrestee as in Kendrick.
[The police have a duty to protect against violent crimes and to see that the laws are being followed. However, this duty is owed to the public generally, not to the plaintiff individually. Claims of this nature are barred by the public duty doctrine.
Finally, plaintiff claims that a material issue of fact exists as to whether the city was negligent in failing to provide proper lighting and maintenance on the premises. Ms. Johnson testified that when they first arrived at the park it was still daylight, and that she did not remember if the light came on during the incident. She also testified that during the verbal altercation that occurred between Mr. Shepard and his assailant, it was dusk, but “it was enough light that you didn’t need any illumination or lighting.” She estimated that the incident occurred between 6:00 and 6:30 p.m., and that following the incident, she drove the plaintiff to her mother’s home where the ambulance was called. The dispatch log from the DeR-idder Police Department notes that this was logged in at 7:51 p.m.
An affidavit from John M. Grymes, III, the State Climatologist at the Southern Regional Climate Center for the Louisiana Office of State Climatology, establishes that the sun set on the date of the incident at approximately 7:37 p.m. The affidavit also notes that the civil twilight or “daylighf’ceased at approximately 8:01 p.m.
Thus, the sun was setting during the incident, although it did not become dark until 8:01 p.m., which was a full ten minutes after the incident was called in to the police department from Ms. Johnson’s mother’s home. Whether the lights on the basketball court at Northside Park were functioning that evening is not a material issue of fact as it was still daylight during the incident.
Accordingly, no genuine issue of material fact exists, no duty was owed to the plaintiff, and movers are entitled to a judgment as a matter of law. The trial court [correctly granted defendant’s motion for summary judgment. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
THIBODEAUX, J., dissents & assigns written reasons.